# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MEHDI ABDOLLAHZADEH,<br>Individually and on behalf of a class,<br><br>          Plaintiff,<br>v.<br><br>SEQUIUM ASSET SOLUTIONS, LLC,<br>RESURGENT CAPITAL SERVICES, LP,<br>& LVNV FUNDING, LLC,<br><br>          Defendants. | Case No. 18-cv-01890<br><br>Judge: Charles P. Kocoras<br><br>Magistrate Judge: Michael T. Mason |

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS WITH INCORPORATED BRIEF IN SUPPORT

Defendants Sequim Asset Solutions, LLC ("Sequim"), Resurgent Capital Services, LP ("Resurgent"), and LVNV Funding, LLC ("LVNV") (collectively "Defendant"), through their undersigned attorneys, respectfully request that the Court enter judgment in their favor and against Plaintiff Mehdi Abdollazadeh ("Plaintiff") and the putative class on the pleadings as to Count I of the Complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In support, Defendants submit the following memorandum of law.

## INTRODUCTION

In Count I of the Complaint, Plaintiff conclusorily alleges Defendants violated Sections 1692e, e(2), and e(10) of the Fair Debt Collection Practices Act (the "FCPA"). *See generally* Compl. Plaintiff first alleges Defendants violated these sections by failing to explain that a judgment entered by an Illinois state court (the "Judgment") regarding the subject debt was dormant and that Defendant LVNV was not the judgment creditor. *Id*. Plaintiff is wrong and courts have rejected this exact theory. *Liang v. Frontline Asset Strategies, LLC*, 2016 U.S. Dist. LEXIS 177013 (N.D. Ill. 2016). Plaintiff next alleges Defendants violated Sections 1692e, e(2), and e(10) by referring to Plaintiff's account as an "account" in a February 22, 2018 letter

because Plaintiff alleges that the "account" ceased to exist upon entry of the Judgment, pursuant to the Illinois "merger doctrine." *Id*. As a matter of law, that was not the case and Plaintiff entirely misconstrues the "merger doctrine." For these reasons, and the below reasons, the Court should enter judgment in favor of Defendants as to Count I of the Complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

Prior to 2005, Plaintiff opened a credit card account and incurred debt on that account (the "Account"). Compl., ¶ 15. Plaintiff failed to repay the Account as agreed. *Id*. A collection case was filed against Plaintiff in the Circuit Court of Cook County, Illinois, case number 2004-M1-139993 (the "State Court Action"). *Id*. The state court entered the Judgment in favor of Sherman and against Plaintiff on or around January 13, 2005. *Id*. The Judgment was assigned to Defendant LVNV. Defendant Sequium, a collection agency, later sought to collect on the Account. As part of those efforts, Defendant Sequium sent Plaintiff a letter dated February 22, 2018, a copy of which Plaintiff attached to the Complaint as Exhibit A (the "Letter"). As of that date, Plaintiff owed $6,478.32 on the Account. *See* Compl., Ex. A. Plaintiff alleges the Letter violated Sections 1692e, e(2), and e(10) of the FDCPA in Count I of the Complaint (for the reasons discussed above). It did not—as a matter of law—and the Court should enter judgment in favor of Defendants as to Count I.

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules a Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). As

2

such, to survive a Rule 12(c) motion: "(1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim "must contain sufficient factual matter . . . to state a claim for relief that is plausible on its face." *Id*. A complaint that only pleads facts that are "merely consistent with" liability fails to cross the line from "possibility" to "plausibility." *Id*.

## ARGUMENT

### I. The FDCPA Did Not Require Defendants to Explain that the Judgment Was "Dormant" or that Defendant LVNV "was not the judgment creditor."

Plaintiff alleges Defendants violated Sections 1692e, e(2), and e(10) of the FDCPA by failing to disclose that the Judgment "was dormant" and that Defendant LVNV "was not the judgment creditor." Compl., ¶ 62. But, a plain reading of Sections 1692e, e(2), and e(10) confirm that none of those sections required or imposed an affirmative duty on Defendants to disclose the purported information. *See* 15 U.S.C. § 1692e; 15 U.S.C. § 1692e(2); 15 U.S.C. § 1692e(10). A court in this district has agreed. *Liang*, 2016 U.S. Dist. Lexis 177013, at *9-10 (dismissing a Section 1692e claim where the plaintiff alleged that the defendant failed to disclose that the judgment was dormant and that defendant was not the judgment creditor).

Moreover, where the language of a statute is clear and unambiguous—as is the case here—it is well settled that courts must apply that statute as written. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("The first rule of statutory construction is that where the language of a statute is clear, the court must apply its plain meaning as written . . . When the

3

words of a statute are unambiguous, then, this first cannon is also the last: judicial inquiry is complete."). The Seventh Circuit, in an FDCPA case, made clear that a court's "analysis of the statute ends with its language" and that courts "must faithfully apply the law as Congress drafted it" and "not disregard plain statutory language in order to impose on the statute what we may consider a more reasonable meaning." *Jenkins v. Heintz*, 25 F.3d 536, 539-40 (7th Cir. 1994), aff'd, 514 U.S. 291 (1995); *see also Matter Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994) ("Even if there were some justification for concern, courts cannot re-write statutes."). Put simply, courts must not read requirements into the FDCPA that are not there. *See Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *36 (N.D. Ill. 2006) (declining to read a provision into the plain language of the FDCPA and rejecting a reading of the FDCPA that the plain language of that statute did not support.). If Congress wanted to impose a requirement on Defendants to disclose that the Judgment was dormant or that Defendant LVNV was not the judgment creditor, it would have. Congress chose not to in Section 1692e, and this Court should not write such requirement into that section.

## II. Defendants Did Not Violate the FDCPA—as Matter of Law—by Allegedly Failing to Explain that the Judgment Was Dormant or that Defendant LVNV "was not the judgment creditor."

As explained, in support of Count I, Plaintiff alleges Defendants violated Sections 1692e, e(2), and e(10) by failing to explain in the Letter that the Judgment was dormant or that Defendant LVNV "was not the judgment creditor." Compl., ¶ 62. Plaintiff is wrong. This same theory has been tested and rejected in *Liang*. *Liang*, 2016 U.S. Dist. LEXIS 177013, *10. Before discussing the *Liang* case—which is directly on point—it is important to answer the question of whether a dormant judgment is enforceable under Illinois law. The answer is yes— as discussed below.

4

In Illinois, apart from certain limited exceptions not applicable here, "no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601." 735 ILCS 5/12-108(a). Section 2-1601 provides that a judgment can be revived "by employing a petition filed in the case in which the original judgment was entered in accordance with Section 2-1602." 735 ILCS 5/2-1601. Section 2-1602, in turn, states that a "judgment may be revived in the seventh year after its entry, or in the seventh year after its last revival, or at any other time thereafter within 20 years after its entry." 735 ILCS 5/2-1602(a). It goes on to state that such a petition "shall be filed in the original case in which the judgment was entered." 735 ILCS 5/2-1602(b). In short, judgments in Illinois—including dormant judgments—are enforceable for up to twenty-seven years, so long as the party seeking to enforce the judgment revives that judgment within twenty years. 735 ILCS 5/12-108(a); 735 ILCS 5/2-1602(a).

The Seventh Circuit, Illinois district courts, and Illinois state courts have routinely characterized the process of reviving a dormant judgment as "nothing more than a clerical requirement" to ensure that judgments being collected have not been vacated or satisfied. *TDK Elecs. Corp. v. Draiman*, 321 F.3d 677, 680 (7th Cir. 2003) ("Normally entry of a reviving order should be a clerical task; all it entails is assurances that the judgment has not been vacated or marked satisfied since its rendition."). In *Liang*, a court within this district dismissed a FDCPA identical to Plaintiff's Count I here. In doing so, the *Liang* court explained how clerical and administrative the process to revive a judgment in Illinois has become and stated that the "dormant nature of a judgment under Illinois law is hardly a barrier to enforcement. The dormant dollar is still a dollar due." *Liang*, 2016 U.S. Dist. LEXIS 177013, at *9. In fact, the revival process has become so clerical and administrative that the court in *James T. Haddon, Ltd. v.*

*Weiss* held that "an express request for revival is not necessary to effect revival of a judgment" and that a plaintiff's "subsequent actions to collect the debt operated as a revival." 342 Ill. App. 3d 144, 149 (Ill. App. 1st 2006). In so doing, the *Haddon* court disregarded the need for a separate petition to revive altogether and held that citations to discover assets filed by a defendant in to attempt to collect attorneys' fees owed on a judgment sufficiently revived that judgment. *Id.*; *see also Department of Public Aid ex rel. McGinnis v. McGinnis*, 268 Ill. App. 3d 123, 130-31 (Ill. App. Ct. 4th Dist. 1994) (holding that a petition that did not expressly seek to revive the judgment nevertheless revived the judgment simply because it stated the details of the judgment and sought its enforcement and confirming that "all that was required to effect revival was 'a creditor must describe the original judgment by date and amount and state whether or not it has been partially satisfied.'").

The issue here thus hinges on whether Defendants violated Sections 1692e, e(2), and e(10) of the FDCPA by failing to explain that the Judgment was dormant or that Defendant LVNV was not the judgment creditor. Given the clerical and administrative nature of reviving judgments under Illinois law, they did not. District courts have agreed. In *Liang*, the plaintiff also alleged that the defendant violated the FDCPA by failing to explain that the judgment was dormant and that it was not the judgment creditor. *Liang*, 2016 U.S. Dist. LEXIS 177013, at *9. The *Liang* court confirmed the clerical and administrative nature of reviving judgments under Illinois law and concluded that "dormant nature of a judgment under Illinois law is hardly a barrier to enforcement. The dormant dollar is still a dollar due." *Id*. The *Liang* court then held— as a matter of law—that the defendant did not violate the FDCPA by failing to disclose that the judgment was dormant or that the defendant was not the creditor of record (*i.e.*, the judgment creditor). *Id*. The *Liang* court reasoned that the "dormant status of the judgment . . . would not

6

have had any practical impact on an unsophisticated consumer's rights or decision-making process in relation to the debt . . . because [d]ormancy does not make the debt unenforceable." *Id*. The *Liang* court also held that nothing was misleading about the defendant's alleged failure to disclose that it was not the creditor of record (*i.e.*, the judgment creditor). *Id*. at 10. The *Liang* court then dismissed plaintiff's FDCA claim accordingly. *Id*. Another district court in Illinois reached a similar conclusion. In *Thomas v. Parkinson*, the court explained that the "1999 judgment [in that case] did not become completely unenforceable after seven years, it merely required court proceedings to enforce it." *Thomas v. Parkinson*, 09-cv-01174, Doc. 24, at 9-10 (C.D. Ill. Nov. 6, 2009).[1] The *Thomas* court then held that the defendant did not violate the FDCPA by seeking to enforce a dormant judgment—even where it failed to disclose that the judgment was dormant. *Id*.

For the above reasons, Defendants did not violate Sections 1692e, e(2), and e(10) of the FDCPA by allegedly failing to explain, in the Letter, that the Judgment was dormant or that Defendant LVNV was not the judgement creditor. The Court should, therefore, enter judgment in favor of Defendants as to Count I.

### III. Defendants Did Not Violate Sections 1692e, e(2), or e(10) of the FDCPA by Referring to Plaintiff's Account as an "Account."

Plaintiff next alleges Defendants violated Sections 1692e, e(2), and e(10) by referring to the Account as an "account" rather than a "judgment" because the "account" ceased to exist upon entry of the Judgment, pursuant to the Illinois "merger doctrine." Compl., ¶ 47, ¶ 48, ¶59,

---

[1] This citation refers to the Report and Recommendation issued by the Magistrate Judge in Thomas, which the district court later adopted in its entirety. *See Thomas v. Parkinson*, 2009 U.S. Dist. LEXIS 110408, at *5 (C.D. Ill. Nov. 25, 2009).

¶ 60. The "merger doctrine"—as a matter of law—did not have this effect and Plaintiff misconstrues that doctrine.

The "merger doctrine" is similar to the doctrines of *res judicata* and collateral estoppel. In particular, the "merger doctrine" provides that when a judgment based on a contract or instrument is obtained, the instrument becomes entirely merged into the judgment and all prior claims from that instrument are merged into the judgment *See Poilevey v. Spivack*, 368 Ill. App. 3d 412, 414 (Ill. App. 1st Dist. 2006); *Kenny v. Kenny Indus.*, 976 N.E.2d 1040, 1045 (Ill. App. 1st Dist. 2012); *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 187 (Ill. App. 1st 2010). Once the instrument is merged into the judgment, no further action at law or equity can be maintained on the instrument. *Poilevey*, 368 Ill. App. 3d at 414. However, the "merger doctrine" is not absolute and "does not necessarily preclude a judgment defendant from commencing subsequent litigation to enforce its contractual rights." *Kenny*, 976 N.E.2d at 1045. The doctrine applies only "to causes of action to bar relitigation of the same cause." *Stein v. Spainhour*, 196 Ill. App. 3d 65, 70 (Ill. App. 4ht Dist. 1990). Where a party does not seek to attack the "judgment itself, but rather attempts to enforce its separate rights under the contract, the merger doctrine does not apply." *Kenny*, 976 N.E.2d at 1045 (refusing to apply the merger doctrine because defendant did not seek to attack the underlying judgment but sought to enforce its contractual right of setoff); *see also Stein*, 196 Ill. App. 3d at 70 (holding the merger doctrine did not merge the subject lease into the judgment and refusing to bar enforcement of contractual provision to collect attorneys' fees even after judgment was entered); *see also Poilevey*, 368 Ill. App. 3d at 417 (refusing to apply the "merger doctrine" to post-judgment recovery of attorneys' fees under contractual provision and holding that the original note did not merge into that judgment for that purpose).

In short, the "merger doctrine" prevents post-judgment, re-litigation of contractual issues already adjudicated. The "merger doctrine" does not apply here because neither Plaintiff nor Defendants are seeking to re-litigate any issues already litigated in the State Court Action regarding the Account or underlying debt instrument. The "merger doctrine" also does not apply because—contrary to Plaintiff's assertion—it does ***not*** render "accounts" non-existent upon entry of judgments. ***No*** Illinois court interpreting or applying the "merger doctrine" has ever held that that doctrine resulted in an "account" ceasing to exist under the circumstances presented here. In fact, the opposite is true. In *RFO Holdings, Inc. v. Metro. Capital Bank*, the court held—even after judgment was entered—that "the parties' original agreement continued in effect until all obligations were satisfied and paid in full, including the indebtedness and any associated attorney fees and costs." 2017 IL App (1st) 153360-U, ¶ 58 (2017). The *RFO* court could not have held such if entry of judgment in that case automatically rendered the subject account non-existent (as Plaintiff suggests). Plaintiff's suggested result upon entry of a judgment defies common sense and logic and is not supported by Illinois law. After all, how could the courts in *RFO*, *Kenny*, *Stein*, and *Poilevey* (discussed above) allow parties to recover amounts or enforce provisions of contracts post-judgment if the subject account or contract ceased to exist upon entry of judgment? They could not have, and that is because the "merger doctrine" has no effect or bearing on the existence of an account. Put simply, "accounts" and "judgments" can co-exist.

Practically speaking, accounts need to and do exist following judgments for a variety of reasons. First, certain federal statutes and regulations mandate post-judgment responses to certain borrower and/or debtor requests. For example, the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 *et seq*. ("RESPA"), allows borrowers and/or debtors to submit notices of error and requests for information regarding their debts. *See* Reg. X, 12 C.F.R. § 1024.35 and 12

9

C.F.R § 1024.36. RESPA obligates the entities receiving such requests to timely respond. This obligation continues post-judgment. *See Zaychick v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 97514, at *4-5 (S.D. Fla. 2015) (defendant's RESPA obligations did not end upon entry of final judgment). Second, judgments, including the Judgment here, could be vacated (and often are). Third, payments on unsatisfied judgments need to be accounted for and applied to the amount owed on the judgment. Fourth, interest and other fees (in certain circumstances) can accrue post-judgment and these need to be accounted for. Fifth, personal deficiencies may exist—even after judgment—where the subject debt was secured by collateral (*i.e.*, auto loans and mortgage loans) and the subject collateral sold for less than the total amount owed. This resulting personal deficiency needs to be accounted for. None of this could happen if an "account" automatically ceased to exist by operation of law after a judgment is entered. Such a result defies logic and common sense and runs contradictory to Illinois law.

For the above reasons, Plaintiff's Account did not cease to exist upon entry of the Judgment under the "merger doctrine" or by operation of any other law. The Letter was thus not misleading or deceptive—as a matter of law—when it referred to the Account as an "account." The Court should, therefore, enter judgment in favor of Defendants on Count I.

**1. Defendants' Referring to the Account as an Account Rather than a Judgment Would Not Mislead or Confuse an Unsophisticated Consumer.**

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. More specifically, Section 1692e(2) prohibits a debt collector from falsely representing "the character, amount or legal status of any debt" and Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2)(a); 15 U.S.C. § 1692e(10). To determine whether a debt collector's communications

10

were deceptive or misleading in violation of Section 1692e, courts evaluate them "through an objective standard of the 'unsophisticated consumer.'" *Simkus v. Cavalry Portfolio Services, LLC*, 12 F.Supp.3d 1103, 1107 (N.D. Ill. 2014) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004)). "This standard assumes that the debtor is 'uninformed, naive, or trusting,' but nonetheless possesses 'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" *Washington v. Portfolio Recovery Associates*, LLC, 211 F.Supp.3d 1041, 1048 (N.D. Ill. 2016) (quoting *Fields*, 383 F.3d at 564)). In other words, the unsophisticated consumer "isn't a dimwit." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). "While the unsophisticated consumer standard presumes a level of sophistication that is low, close to the bottom of the sophistication meter, the standard admits an objective element of reasonableness that protects debt collectors from liability for unrealistic interpretations of collection letters." *McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2016). Although an unsophisticated consumer "may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014); *see also White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) (noting that any document can be misread and the FDCPA is not violated by a letter that is susceptible to "an ingenious misreading."). "If a statement would not mislead an unsophisticated consumer, it does not violate the FDCPA." *Wahl*, 556 F.3d at 645. Determining whether a communication was misleading typically is a question of fact, but if a court can determine from the face of the letter in question that "not even a significant fraction of the population would be misled by it . . . the court should reject it without requiring evidence beyond the letter itself." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-75 (7th Cir. 2004); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009) (holding that if the

11

statements in question "plainly, on their face, are not misleading or deceptive," a court may dispose of the case based on its own determination without looking at extrinsic evidence).

Here, Plaintiff does not plausibly explain how referring to the Account as an "account" rather than a judgment would mislead or deceive an unsophisticated consumer. *See generally* Compl. There is a reason for this: it would not. Consumers generally understand that when they incur a debt (*i.e.*, a credit card, auto loan, mortgage, etc.) that results in an account being created and an account number being assigned. Consumers also understand that these debt obligations are referred to as "accounts." With this general understanding, and when reading the Letter in totality and in the context in which it was received, an unsophisticated consumer—contrary to Plaintiff's conclusory allegation—would not be confused by the Letter's reference to the Account as an account. *See Cardona v. FCI Lender Servs., 2017 U.S. Dist. LEXIS 131908*, *8 (Aug. 16, 2017 N.D. Ill.) (explaining that communications from a debt collector must be read in totality and in the context in which they are received); *Adams v. J.C. Christensen & Assoc.*, 777 F. Supp. 2d 1193, 1196 (March 28, 2011 D. Minn.) ("Language in a debt-collection letter cannot be viewed in isolation; the letter must be viewed "as a whole" to determine whether it runs afoul of the FDCPA.") In fact, Plaintiff fails to allege that he was in fact misled or deceived by the Letter, which suggests Plaintiff understood the Letter and was not confused by it. *Id.* Without such allegations, Plaintiff's claim fails as a matter of law. *See Johnson v. Alltran Educ., LP*, 2018 U.S. Dist. LEXIS 76441, *21-22 (N.D. Ill. May 7, 2018 (holding that to establish a claim under Section 1692e, plaintiffs "must plausibly allege" the letter in question "would materially mislead or confuse an unsophisticated consumer.").

Under plaintiff's theory, for confusion to arise based on the Letter's reference to the Account as an "account" rather than a judgment, an unsophisticated consumer would have to

have a thorough understanding of the Illinois "merger doctrine" and interpret that doctrine to mean that an account ceased to exist upon entry of a judgment. First, this level of sophistication goes far beyond that of an unsophisticated consumer and an unsophisticated consumer would not think an account ceased to exist upon entry of a judgment. Second, this interpretation of the Illinois "merger doctrine" would be incorrect as that doctrine does not render "accounts" non-existent upon entry of judgments (discussed above).

In sum, Plaintiff's twisted reading of the Letter is "bizarre," idiosyncratic," and "ingenious" and the FDCPA does now allow Plaintiff to manufacture a Section 1692e claim based on such a reading. The Court should, therefore, enter judgment in favor of Defendants as to Count I.

### IV. Count I Also Fails Because Any Alleged Violations of the FDCPA Were Not Material.

Count I also fails as a matter of law because any alleged misrepresentations or violations of the FDCPA were immaterial. Count I hinges on whether the Letter's reference to the Account as an "account," its alleged failure to explain that the Judgment was dormant, and its alleged failure to explain Defendant LVNV was not the judgment creditor were materially misleading. Unfortunately for Plaintiff, a court within this district has already held that none of this would materially mislead an unsophisticated consumer—as a matter of law. *Liang*, 2016 U.S. Dist. LEXIS 177013, *10.

The FDCPA is "designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). Consumers "don't need protection against false statements that are immaterial in the sense that they would not in-fluence a consumer's decision .

13

. . to pay a debt in response to a dunning letter." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). A statement is material, and thus actionable under the FDCPA, only if it would "influence a consumer's decision . . . to pay a debt." *Id.* "Materiality" is a required element for FDCPA claims brought under Section 1692e. *See Hahn*, 557 F.3d at 757-58. A false but immaterial statement is not actionable under the FDCPA. *Id.* "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *See Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645-646 (7th Cir. 2009); *see also Hahn* at 757-58. All of this is well-settled in the Seventh Circuit. Following such well-settled principles, courts have routinely rejected FDCPA claims where plaintiffs do not plausibly establish "materiality." *Liang*, 2016 U.S. Dist. LEXIS 177013, *10 (dismissing FDCPA claim because plaintiff did not plausibly establish materiality); *see also Markette v. HSBC Bank, USA, N.A.*, 2018 U.S. Dist. LEXIS 58641, *23 (N.D. Ill. April 5, 2018) (stating that "federal pleading standards require that a complaint contain allegations supporting a plausible claim to relief" and dismissing plaintiffs' FDCPA claims because they failed to plausibly allege defendant's alleged false statements "impacted their rights or influenced their decisions"); *Stockman v. Credit Protection Association, LP*, 2017 U.S. Dist. LEXIS 99902 (N.D. Ill. June 28, 2017) (rejecting FDCPA claim because plaintiff did not establish the alleged statements materially affected her actions regarding the debt).

Here, Plaintiff complains the Letter violated the FDCPA in two ways. First, that it failed to explain that the Judgment was dormant and that Defendant LVNV was not the judgment creditor. Compl., ¶ 62. Even if true, Plaintiff still has no FDCPA claim as a matter of law. In *Liang*, the court addressed this exact issue and held that—as a matter of law—the dormant status of a judgment and the failure to explain that status has no "practical impact on an unsophisticated

14

consumer's rights or decision-making process." *Liang*, 2016 U.S. Dist. LEXIS 177013, *9. The *Liang* court also held that the defendant's failure to explain that it was not the creditor of record (*i.e.*, the judgment creditor) was not misleading—much less materially misleading. *Id.* at 10. Under *Liang*, Plaintiff thus cannot establish "materiality" as a matter of law and Count I fails.

Plaintiff next complains that the Letter violated the FDCPA because it referred to the Account as an "account" rather than a "judgment." Even if the "account" ceased to exist upon entry of the Judgment as Plaintiff contends—which was not the case—and even if Defendants reference to "account" was a technical falsity, Plaintiff's claim still fails. That is because he fails to plausibly establish that the Letter's reference to the Account as an "account" rather than a "judgment" influenced his decision regarding the Account in any way or that it would influence an unsophisticated consumer's decision in any way. In fact, Plaintiff's Complaint does not contain a single allegation explaining how the Letter affected him (presumably that is because the Letter had no effect on him at all)—much less set forth sufficient facts to plausibly establish that the Letter "materially" affected him. *See generally* Compl. Without such allegations, Plaintiff does not satisfy the materiality element and Count I fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment on the pleadings in favor of Defendants as to Count I, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

302620356v1 1009206

Respectfully submitted,

HINSHAW & CULBERTSON LLP

*/s/ Joseph D. Kern*
Joseph D. Kern

David M. Schultz
Nabil G. Foster
Joseph D. Kern
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
nfoster@hinshawlaw.com
jkern@hinshawlaw.com

# CERTIFICATE OF SERVICE

      I, Joseph D. Kern, an attorney, certify that on January 8, 2019, caused to be served a copy of the foregoing **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS WITH INCORPORATED BRIEF IN SUPPORT** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

- ☒ ECF
- ☐ Facsimile
- ☐ UPS
- ☐ U.S. Mail
- ☐ E-Mail
- ☐ Messenger Delivery

To:    All Parties of Record

*/s/ Joseph D. Kern*
Joseph D. Kern

302620356v1 1009206